Mr. Smith for the Abellan-Bryan Burwell Mr. Gale for the Appellee Good morning, Council. Ms. Simeleon, please proceed when you're ready. Good morning, your honors. Courtney Milleon on behalf of Mr. Perkin, and I'd like to reserve two minutes for rebuttal. Divisible statutes are rare. The Supreme Court's precedent tells us this, and so does this circuit's precedent. The first paragraph of 18 U.S.C. 2113 is not one of those rare divisible statutes. We know this for four reasons. First, the text and structure of the statute. Second, the legislative history. Third, case law. And fourth, the government's own charging decision. I want to focus on the first two points, but I welcome questions on all of them. The text and structure of the statute here demonstrates that this is indivisible, that taking by force, intimidation, and by extortion are means rather than elements. We know this because extortion was inserted into a single paragraph of this statute next to the taking by intimidation and taking by force. These also have the same object, and if you zoom out and look at the statute as a whole, it confirms what this insertion suggests, which is that Congress intended to group like with like and put in separate paragraphs different offenses. Can I ask you, so this is an interesting kind of geometric puzzle this statute presents, and suppose that instead of adding by extortion in the way that you just recounted from the history, you just alluded to from the history, what Congress did is to do exactly the same thing in terms of the words, but it just repeated all the words that apply both to force and to extortion in a new paragraph. So right now the way this provision is structured is you have 2113A, which consists of two paragraphs, one of which has the force part and the extortion part, and the other of which has burglary. But let's just suppose what Congress did is instead of putting extortion in that first paragraph, it decided to have a next paragraph that did whoever obtains or attempts to obtain by extortion any property or money, etc., etc., which would do exactly the same thing in terms of the offense. It would codify the same prohibition. It would have the same effect in the real world on primary conduct, and they put it in a separate paragraph, like the burglary paragraph, then would we reach a different conclusion than the one you're urging? I think you would, Your Honor. I think that would be a sign by Congress that it's intended to make these, this is a separate offense, this is to be divisible, and that's an element rather than an element. Even with the House report, which specifically says there is no gap in federal law, that extortionate conduct has long been prosecutable under the Bank Robbery 2113A, and by making it explicit, we're not changing the law. We're just clarifying. So that certainly is a point in our favor and underscores the textualist decision Congress made to put these in a single paragraph. I do think, you know, it would still possibly be a really close question, even if Congress put this in a separate paragraph, because of the legislative history you allude to, but this is not that close a case because it chose to put it in the same paragraph. It just kind of leaves me wondering, we have to do this, and I totally understand it, and it's the right way to approach the analysis for all kinds of reasons, including that Mathis tells us how to do this. It just so much turns on things like where exactly the words are put into this paragraph instead of doing a separate paragraph that does exactly the same thing in the real world. At the end of the day, is the most forceful point you have the way the geometry of the provision works as we look at it, or is it that, no, if you look at actually the way this provision arose, what it was really about was trying to just treat extortion as a species of force or intimidation, force, violence, and intimidation, and when you think of it that way, you just fold it into that instead of treating it as something distinct. So I think these two work in tandem with one another, and that the textualist point is reinforced by the legislative history. That's how we do, in today's modern age, that's how we do statutory interpretation. We look at the text itself, and then we look at legislative history to see if that sheds additional light on the text. Because the textual organization seems less compelling when you look at Catala, where conspiracy is folded right in there in the same sentence, separated by nothing more than or, and it's in Mathis, where early in the opinion, Justice Kagan says, suppose, for example, that the California law had prohibited the lawful entry or the unlawful entry, you know, in one sentence, you know, would that, like, one thinks in that situation, would that, you know, would slowing it together in one sentence change things? My sense is... So I think the structure of the statute in Catala is different, because it does put everything, the whole statute, in a single paragraph. That's very different than the choice that Congress made here, which is to set out a bunch of different paragraphs which correspond to different offenses. Plus, I mean, I think the real emphasis that we placed in Catala is on the long-standing distinct character of conspiracy as a separate offense. Let me ask you this, suppose a bank manager gets a call from his wife and says, a guy has a knife to my throat here in our kitchen, and he says that if you don't hand a bag full of money to a guy wearing a green coat in the bank, he's going to kill me. And the husband bank manager says, okay, fine, tell him I'll do it. And he hands a bag full of money to the guy with the green coat, and he walks out. The man charged with being the man in the green coat goes to trial, and he's indicted. And the indictment lists basically a whole first paragraph there of 2113A. And he asks for a unanimity instruction and says, you know, I think that the jury should have to, 12 members should have to agree whether it was force and violence or whether it was extortion. I'm the trial judge. Do I give that unanimity instruction? Usually not, because the statute is indivisible. Because these are extortion and taking by force and violence are means rather than else. You're a defense lawyer, and you're not asking for a unanimity instruction? You always ask for a unanimity instruction. You do ask for a unanimity instruction. I do think under the law that that would be a losing argument here, because of the textualist choices made by Congress in writing the statute. We defense lawyers ask for unanimity instructions all the time, and we often lose on them. And I think this is an instance in where we lose. I mean, you're pointing to something that is just awkward about the categorical approach for me as a member of the defense bar, which is I'm arguing and largely arguing against interest. Because for something to be indivisible, it means that in a future case, I'm not going to get a unanimity instruction. But that's just the nature of the analysis here. And I think that the statute is indivisible, and so we don't get the instruction. I guess you could say that you could have the same question about intimidation versus force and violence, because those are posed as alternatives in this paragraph, too. And I suppose you could have the same question, because a lawyer could ask for a unanimity instruction as to force as opposed to intimidation. And I assume your view is that that would be denied. But I will say it seems a little odd. There's something that seems somewhat surprising about a jury that can be told. You don't have to be unanimous on whether this was done by force or by extortion. As long as some of you think it was done by one or the other, it's okay. But that's where we're left under your reading of the statute. That is where we're left. And now, in some sense, it might seem odd. I think this is a type of choice that Congress makes all the time and that legislatures make all the time. I would point to the Supreme Court's decision in Schad, which had to do with a first-degree murder statute. And in that case, it's clear that legislatures and state supreme courts across the country have concluded that jurors do not need to be unanimous as to whether it's premeditated murder or felony murder. Two things that feel very different. I would say even more different than what the government here calls bank robbery and bank extortion. That's an interesting example. Suppose the statute said, whoever by murder takes or by extortion obtains, would you still say that murder and extortion are means? Yes, I would. But I do think this is a much easier question than that because of the relationship between extortion and robbery and the fact that these are very close cousins of one another. And as the government's own brief points out, extortion was really created to fill a loophole in robbery. Is there a theory under which extortion could be a species of murder? Again, I think I'm very influenced by the House report, which said that there was no gap in the law. You wouldn't be able to have anything like that in the hypothetical that Chief Judge Srinivasan mentioned. There's no way to think about it as a different means that's a sort of more finely articulated subset of the other means. But you would say it's two different means?  Because that starts to look like conspiracy and the primary offense, which we know actually are separate offenses, even if they're put together in the same clause. And if you put murder and extortion together, then I mean, I think it is the answer you gave. Because you said, well, this one's easier because extortion can be seen as a species of force and intimidation in a way that extortion may not be seen as that for murder. But the more we place emphasis on the geometry part of the way the statute appears, the more we have to contend with possibilities like that. I would also point out that under the unanimity decisions like Chad, the court recognized that legislatures can put together things that are historically different, and in fact really often do put together things that were historically considered separate offenses into a single statute, meaning to treat them as means. The court does suggest that there might be a point at which they are so very different that actually jury unanimity would be required. And it's possible in that context, I'd have to give it further thought, that we might, that substantive part of the law might step in and say, you know, no matter what Congress decided, for due process reasons, you need unanimity because these are just so darn different. They're not the same as felony murder and premeditated murder. These are really different. And so you would need unanimity, in which case it would be an element rather than a means. What do you make of the passage in Carter v. United States that rejects the argument that robbery in 2113A imports common law, the common law meaning of robbery, but implies that extortion in 2113A might actually have a common law defined meaning? Doesn't that make this really parallel to Catala, if that's right? So I don't think that whether it imports common law defined meaning, as a matter of sort of substantive law, how we define the offense, answers the question as to whether it's divisible or not. It might in a very dramatic context like conspiracy, but I don't think it necessarily does so here for the reasons I've articulated already, that Congress is completely at liberty to take what were historically different offenses and decide to make them means rather than elements. But the means versus elements distinction, I think it can be, it's not always, I don't know that it's always easy to parse out where let's say aiding and abetting. If someone in my hypo, the defendant is the driver who's waiting outside the bank and the guy with the green coat gets in the car and the defendant drives him away. He's prosecuted under 2113A, but there also has to be an allegation in the indictment under the aiding and abetting statute. It's a separate statute. But if this goes to trial, you're not going to get a unanimity instruction that says that the jury has to agree that he's either an aider and abetter or a principal because that ship sailed decades ago, right? But it's clearly two separate statutes. So is that really still indivisible? So I don't, in the context of aiding and abetting, I don't think that divisibility question is really necessary because under aiding and abetting law, you're treating the aider and abetter as the principal. We just look to the underlying conduct to decide the crime of violence question. I should say my office and I continue to argue that it should not be treated that way. It should be treated differently, but we were denied a COA on that and have universally lost that question in other circuits. Okay, thank you. Thank you. We'll give you a little bit of time for rebuttal. I just have one more question about in the Hobbs Act, robbery and extortion are likewise mentioned in the same sentence, even in the same phrase without any separate commas in between. It just talks about whoever in any way or degree obstructs commerce by robbery or extortion or attempts or conspires to do so, and yet courts, lots of courts have held that the Hobbs Act is divisible between robbery and extortion. So why isn't that persuasive evidence that when Congress in 1986 amended 2113A, it intended the same result? Because it made a different statutory structural choice. It could have done exactly what the Hobbs Act does, which is put definitions in separate statutory subsections for robbery and for extortion. It had that option on the table. It was fully aware of it because, as you note, this was done against the backdrop of issues with the difference between prosecutions under the bank robbery statute and the Hobbs Act robbery statute. But the fact that Congress made a different statutory structural choice is meaningful. Is it really different, or is it just a little bit more understated? If the substantive text of the provision is similar, I mean, the Hobbs Act is even less separated out, but it's held to be divisible. And so the definition of extortion is, I mean, 2113A, they saw the definition of the Hobbs Act. There's a common law definition Carter says, you know, maybe 2113A incorporates the common law definition. So in terms of the definition, there are other places to find that. But the substantive text, what I'm really focusing on is that the substantive text of, you know, criminal liability under the Hobbs Act is, if anything, less divisible than the substantive text, the relevant substantive text of 2113A. So I don't think it's less divisible, but I would also note... Because of the definition? Anything else? I mean, that would be the primary argument. And because the definitions are segmented out, there's a lot more language demonstrating that Congress thought about these as two distinct things rather than inserting them together. And as you know, there's a legislative history that... The upshot of your position then has to be that, for some reason, Congress, for purposes of the Hobbs Act, thought that extortion and robbery are alternatives. They're on the same plane. They're alternatives. But Congress, when the same kinds of stuff happens in association with the bank, thought that extortion was a type of robbery, if we think of robbery as force, violence, and intimidation. They just didn't think of those as the same thing, for some reason, because one involves a bank and the other doesn't. And I think the legislative history supports that interpretation. The legislative history, right, to the extent we can glean something from it, supports it in terms of the bank. It doesn't tell you much about why Congress would have thought that extortion is just one kind of conduct when it involves a bank, but it's actually a distinct, parallel kind of conduct when it doesn't involve a bank. I think if you sort of... If you're trying to decide whether Congress wants to make this means or elements, the bank robbery statute is really targeted at just banks because of concerns of banks. The Hobbs Act robbery statute is much broader, and Congress had in mind lots of different things when it enacted it, things like extortion by labor union and extortion by public officials in a bribery context, and a very different thing like highway robbery. Apparently, at the time, there were literal robberies occurring as people were entering the Holland Tunnel at gunpoint. And I think in that context, when you're dealing with so many truly disparate things in all sorts of factual circumstances, there's a real reason Congress might want to say, you know, we need to be unanimous as to those, but not in the bank robbery context, which is just a much narrower set of factual circumstances. Next. Is the instruction that was given in this case for bank robbery, is it in the JA because I see instructions for aiding and abetting, but not the instruction that was given for bank robbery? Am I missing it? Do you know whether it's in there? I can't recall off the top of my head. If I sit down, I can probably give a record site for where you can find the transcript as a whole that has the jury instructions. The standard instruction for bank robbery, you know, from the pattern instructions, does essentially treat these things as means in that it doesn't set it up as the jury having to find, that the jury can find kind of one or the other of these things, and it's not, unless someone were to request a special unanimity instruction, it doesn't appear, given the standard instruction, that a jury would have to be all 12 in agreement that it's force and violence versus intimidation versus extortion. Is that your understanding of, like, the way that the standard instruction works? Yes. Annette, if we, I think we don't need to get to sort of the third math is peak option. I think the text is quite clear. But if we were, if the court were to sort of be uncertain and we were to go to that third step, looking to jury instructions and standard jury instructions is another factor the court can consider. I thought, I wasn't even sure that those two factors apply when you're not dealing with a state context. It's just, I think what Mathis, that was a state case, and I thought what Mathis was saying is you can look at cases and you can look at instructions and things like that when it's a state offense because the federal courts don't control that. So we have to take the state impression of that as a given. It doesn't make all that much sense to do it in the federal context because pattern instructions can be wrong. What court cases say can be wrong until the Supreme Court decides. And so it didn't seem apparent to me that those next two considerations actually apply in the federal context. So across the country circuits, including the circuit, do look to those things? In federal cases, yes. I think you're on a good point, which is that those cases and those instructions are, certainly the cases are binding on a federal court when they come from a state court. And that's not going to be the same situation here. But that doesn't mean that these aren't sort of pieces of meaning that we sometimes look to. I mean, they could be persuasive, just like any opinion we look at in any case can be persuasive or not. It just doesn't seem like it would have nearly the weight that it would. I do think that's right. And on the instructions in this particular case, I thought it was under the impression from somewhere in the briefing, and maybe you can check or somebody else can, but I thought in this case that the instruction that was given didn't mention the entire text of the statute and it focused specifically on what we were calling the robbery part, which is forced violence and intimidation. That doesn't necessarily mean that the statute is divisible, but it does mean that in this case there was no need to tell the jury anything about extortion. The government certainly proceeded on a theory of bank robbery by force and violence. And I apologize if my answer to your question was the same. I thought we were talking about pattern instructions versus this division of instruction given here. And I think you're right. I can double check when I see that. Yeah, I believe that the indictment only mentioned force and violence, so there wouldn't have been a need necessarily in this case to instruct on that. I was just curious, though, because I didn't see the instruction. And in my mind, whatever the pattern instructions are and jury instructions are could be relevant and perhaps even dispositive because if our court said back in 1989 that there is no need for a unanimity instruction, then I think we would be bound by that interpretation and that would be your case. And if they said you do need one, then that would be your case. It would be the government's case. My recollection is that there was a litigation over the necessity of a unanimity. Well, that instruction has to include that. Then we don't have decisions on that as far as you know. All right, thank you. Counsel. Mr. Smith. Good morning. May it please the Court. My name is Greg Smith, appointing counsel for Brian Burwell. And I will argue what I hope is the most simpler issue involved in this appeal, which is Mr. Burwell's Rosemont issue. Very briefly before I go to that, though, I did want to just quickly add Courtney's argument that the rule of lenity is an added basis for a Johnson reversal here. Congress has to clearly state that it wants this additional penalty to be applied. And as Judge Srinivasan just mentioned, this is basically a geometric puzzle. And in a case of a geometric puzzle, it has not been clearly stated by Congress. If it seems odd to you that extortion is robbery in a bank context but not a Hobbs context, if you're struggling, that alone is enough because it has not unambiguously been written and lenity should be applied, and especially so here when no one, literally no one including the government, is saying that fairness and justice requires them. These clients have been 15 more years in prison unnecessarily unless this statute specifically requires it. No one is saying that that extra 15 years is fair. Now, turning to Rosemont. One thing on lenity, I appreciate why lenity comes into play in this case. But I wonder, you wouldn't make the same argument about lenity as between forced violence and intimidation. In other words, even lenity principles wouldn't tell us that intimidation, violence, and force should be treated as divisible as opposed to alternate means. What I'm saying is if you don't think Congress made it clear that this is divisible versus indivisible, that alone is a basis for applying lenity. Okay. I think it's Congress's obligation to make it clear, and that hasn't happened here. On Rosemont, the standard review, as the government admits, is the no vote. Mr. Burwell's jury never made any findings that he personally possessed a firearm in the industrial bank, and it didn't have to. Instead, this jury was allowed to convict him of count 11 based on a mere aiding and abetting theory of liability. Aiding and abetting was a component of every key question this jury answered on count 11. And in fact, we logically know that they actually did apply an aiding and abetting analysis to at least certain parts of count 11 because their special verdict found proven a claim that Mr. Burwell had discharged the weapon. That was aiding and abetting. No one suggested, and there was no evidence of all, that Mr. Burwell ever discharged any firearm himself, ever. So they were clearly applying an aiding and abetting theory on the discharge question. So the only way the jury could find that proven was by applying an aiding and abetting analysis. There is no reason to think this jury applied an aiding and abetting theory only on some of the questions on count 11's special verdict form. Ms. Smith, assuming that the jury did apply an aiding and abetting theory, what's needed is that Mr. Burwell had advanced knowledge that the weapons were to be used, right? And the jury, in entering a verdict of conviction of Mr. Burwell, clearly rejected Mr. Burwell's alibi defense and apparently the related DNA defense, is that right? So he was there. There's overwhelming evidence that Mr. Burwell was part of the group that went to the industrial bank. Your Honor, that came from a single witness. This is a single witness case. Right. So is there any trial evidence that could have given the jury a reason to find that Burwell either wasn't there or did not know that his confederates would be carrying guns during the industrial bank robbery? The jury never decided this. The focus was never on when, and that's the key point in Rosemont. Rosemont? When what? When he knew that guns were being carried in this particular bank. Put aside for the moment. Okay. I take your answer to my last question to be preserving the notion that maybe the jury would have found that he was absent. Put that aside for the moment, assuming that the jury finding was that he was present in the group.  How, and the testimony, the unrebutted testimony was that Burwell rode in the same car. Only from a single witness. Right. That's unrebutted testimony. There's no other testimony that there was a separate car. There's no suggestion that there was a separate car. But it raises questions about when did he learn that guns were being used in this robbery? We know he learned of it at the point when a shooting took place, and his reaction to that was, we've got to go, we've got to go. Which suggests, Rosemont talks about the importance of someone knowing in advance, for knowledge, because he needs to have an opportunity to leave, withdraw, and that sort of thing. And here, when the only clear indication that he knows that a gun was present, the shooting, his reaction is to withdraw. We've got to go. So there is some evidence that could have been put to this jury, but was not. Is it your contention that the jury would have to find that he had advanced knowledge that a machine gun was going to be used, versus just a firearm? Your Honor, I think we are arguing both. And yes, I think that there are two different issues. One is the foreknowledge that a machine gun was being used. But I also want to point out this fact. If you look at the specific verdict form, the machine gun question talks about the firearm. The firearm. And it's not clear what the firearm is. The closest question asking about is the firearm, a machine gun, is the one that talks about discharging. And we know that the firearm that was used with the discharging was the two-handled one that was fired, on which they found only by an aiding and abetting theory. So, in other words, I guess what I would say is that machine gun enhancement is premised on a firearm that was found only by an aiding and abetting theory. An aiding and abetting theory that was tainted by legally erroneous jury instructions. The most logical reading of this verdict form is that the firearm was referring to the machine gun that was closest in order of the questions that were being posed, which means the discharged firearm on which the only way they could find him guilty was aiding and abetting. So, the machine gun enhancement is based on a firearm that was found by an aiding and abetting theory that was based on an erroneous aiding and abetting instruction. So, we believe that, at a minimum, you should drop the machine gun enhancement because that enhancement is premised on a firearm that was tainted by an aiding and abetting. The most logical view is that it was based on an aiding and abetting theory that was tainted by a Rosamond deficient jury instruction. But what of the fact that our court on Bonk upheld the conviction and rejected an argument that he had to know that the gun was a machine gun? There are two different theories here. One is, as I say, that he had to know that it was a machine gun. It definitely addresses that issue. But the separate issue about what was the firearm that this jury found was the machine gun. Here, the firearm that it found, if you look at the verdict form, the closest firearm being discussed in the verdict form was the discharged firearm. That is a firearm that was tainted. The finding of guilt on that firearm was only by an aiding and abetting theory. So, we have a machine gun enhancement that I submit relates back to a finding on a firearm that was only found because of an aiding and abetting theory that was deficient. So, we think that regardless of whether he had to have foreknowledge that a firearm in general was being used, we have the problem that the jury finding here was premising the machine gun enhancement on a specific firearm on which it was a tainted aiding and abetting theory that was used to find him guilty of the discharged firearm. Can I ask you just to understand the relationship between the two arguments, the divisibility argument and the Rosemont argument? I'm not – just assume for present purposes that the appellants prevail on the indivisibility-divisibility argument, then this issue is unnecessary to be reached because they do the exact same thing. I think that's correct. Okay. So, and then on this one, suppose we went the other way, so this one is relevant at least to your client. Yes. Then we go the other way. Then there's still the cause and prejudice question, right, because this was not flagged at trial. And so the question becomes, do you have to show cause and prejudice in order to prevail? Yes, we raised an argument that their cause and prejudice – or, excuse me, their procedural default, which is the same thing, was untimely raised. I'm not going to belabor that. We don't think it was raised – we think that it was waived because it was raised more than a year later and only for the first time on appeal. But even if procedural fault does apply, I'm happy to address those issues. First is cause. Rosemond's newly established requirement of foreknowledge, as we explained in our reply brief, is novel. And not only do we say it, but the Ninth Circuit itself also said it specifically in Alfred v. Garland. It said that Rosemond is built on general principles, but its application of those principles to 924C was novel. The Ninth Circuit specifically said that it's novel. And novelty is a specific basis for cause. It was unreasonable to expect the CJA counsel to argue foreknowledge either at trial or on direct appeal, especially when the government even admits that the Rosemond case, not just the Supreme Court, but the Tenth Circuit brief in Rosemond raising this issue, had not even been filed until a month after Mr. Burwell's appeal was over. So how are you supposed to know that this issue is out there? Well, we have a case, United States v. Powell, that this court decided in 1991, which held that, quote, for 924C liability, the accomplice must have known to a practical certainty that the principal would be carrying a gun, end quote. And I know neither party cited that, but that's a decision of our court, interpreting 924C well in advance of Rosemond. And the First and Second Circuits had also made similar statements and decisions that predated Burwell's trial. And it doesn't have to be the Supreme Court clearing up any ambiguity in the law of other circuits to provide a basis for Burwell to have made the Rosemond argument at trial and on direct appeal. Let me say just a couple of things. First, seeing the Powell case wasn't cited, so I'm sort of doing this off the cuff here. But a finding that you had to know that you would be carrying a gun is not necessarily the same as what Rosemond found. In advance? In advance. Would be is, I think, the tense that you use when you're saying, what is it, the future? I take your point, but it also goes further in Rosemond. It's simply not just that you had a sense that somebody would be carrying a gun. It has to be far enough in advance that you have an opportunity to withdraw. But on the timing, is it, in this case, if when Mr. Burwell was picked up, the guns were in the car, out, evident, everyone's holding them, and someone hands him one, is that not far enough in advance, in your view? Your Honor, I think that that needs to be decided by a jury, first of all. Wait, but isn't it a legal question how far in advance is far enough? No, I think it's a factual question under Rosemond. I think it is for the jury to decide, is it far enough in advance to where there's an opportunity to withdraw? So if the jury had a, if there was a special verdict and the jury found that when Burwell entered the vehicle, he was handed a gun and he saw that the others each had a gun, would there be a jury question whether that was knowing in advance? Yes. Yes, I think that's for the jury to decide. And let me just say, too, the Powell case that you cite as well is not what this jury was asked. The language about you had to know in advance or you would be, you had to know that people would be carrying a gun, is not what this jury was instructed. The entire focus would have changed. Here's what this jury was told. It was enough for guilt if he simply knowingly associated or participated in a crime as something that he wished to bring about. That even mere physical presence was enough if he intended to help in the commission of the crime. And the government was not required to prove anyone discussed or agreed on the method of committing the crime. That last one is basically telling the jury the opposite of Powell, that it was not required to prove that anyone agreed or discussed on the method of committing the crime. That they were not told. I may not have been clear in my questions. I mean, the government acknowledges that this jury instruction was inadequate. And I think that's the baseline for the argument today. And the questions really are about whether it was prejudicial given the proof. Okay, I'll move to prejudice next. But on the cause question, I just want to conclude by saying this. I'm a pretty creative guy. The aiding and abetting standard instructions, which is what we're given here, which didn't incorporate Powell apparently, have been given for decades. It's a very hard standard, aiding and abetting, used to have under that standard instruction. It was almost impossible to win. I can tell you from arguing cases. None of us, I submit, thought that there was a foreknowledge requirement like this until Rosemont. It was a novel, different thing, and it upended every standard instruction that I'm aware of in the federal system. Now, moving to prejudice. This was a jury that spent 14 days deliberating. It asked question after question after question. So if you're looking at prejudice, and the case law in this is clear, the question is not what you think logically, what do we think would happen if we sent it back on remand. No. The question is, would it have affected this jury at the time? Is it reasonably likely that it would have affected this jury? This was a jury that struggled over this case for 14 days, over four weeks, past a holiday. Any little thing, I submit, could have and would have had a potential effect on this jury's deliberations. The entire focus, as I say, would have changed if the proper jury instruction had been given. Which way to that? Because it's true that any little thing, so there will never have procedural defaults on any claim because there's always prejudice whenever a jury contemplates a serious charge for a long time. I don't think you need to make a rule of law about when it does, but thinking of this logically, you're supposed to look at what this jury would have done. Was it reasonably probable that this might have had an impact? And I think when the jury was struggling this hard over 14 days, and when you know that the entire theory and focus of the trial would have changed. Obviously the jury can struggle a mighty long time on a tough case about things other than the issue that's being presented. I know, but I also want to point out, this was basically a lay down on aiding and abetting. There was no argument at all raised on aiding and abetting. And given the standard jury instructions, what are you going to argue? This would have given the defendant a chance to argue. He could have said there was no foreknowledge. He could have said he had to have an opportunity to withdraw. He could have pointed out that when the gun was fired, he suddenly said, extemporaneously, the first thing he said is we've got to get out of here. Was there any cross-examination of Titani on, you know, to kind of pin down the point you're making about it seems like it doesn't just go to foreknowledge. It goes to, you know, Burwell's general kind of equitable culpability and involvement. Is there any cross-examination about whether the guns were in the trunk when they picked up Burwell, about whether Burwell himself might not have been carrying a gun, about whether he, you know, went out of the car first and didn't see everybody else pulling him out of the trunk, or any kind of effort. Because, as you say, this is a one-witness case. Right, which is, of course, another reason why I think there's prejudice. I mean, with the 14 days, it's not just a 14-day deliberation case. This is also a one-witness case. But in terms of what you're asking, that's exactly the sort of thing that would have been available to the defense counsel to ask if he'd known that the Rosemond standard applied. I guess my question is, wouldn't, didn't he have every incentive for that kind of cross-examination in any event? And that just wasn't his defense. It wasn't because of the standard aiding and abetting infrastructure. I can tell you from experience, arguing against aiding and abetting under the general standards before Rosemond, there wasn't anything there, much to argue. But people were arguing about what intent, what was the intent requirement in aiding and abetting. I mean, I argued an aiding and abetting appeal in the D.C. Court of Appeals in 1991, where my client was an aider and abetter to first-degree murder on the government's theory. And I argued that the instruction didn't make clear that he had to have intent to kill at the time of aiding and abetting. And the government agreed. And the court said so in its opinion. So, like, despite the standard and instruction and the kind of bad law for defense lawyers generally with aiding and abetting, people were arguing 30-plus years ago, well before this trial, that there needed to be at least, if not the same intent or knowledge as the principal, something really close to it, at least in the same ballpark. How does that affect how we look at the cause analysis? I think what the Ninth Circuit said in Alfred v. Garland is right. It said that Rosemont was built on general principles, but its application was novel. It's talking exactly about what you say. The notion that the aider and abetter had to have the same intent as the principal is a general principle that has been around. It doesn't always prevail. In fact, I would say before Rosemont, it rarely prevailed. But Rosemont put specifics into those teeth. That's bad mixing analogies. I'm sorry. But what it gave you was specifics, not just in general. The general principles Alfred v. Garland talked about, the aider and abetter has to have the same intent as the principal. It went beyond that. It said you had to have foreknowledge, not just knowledge, but foreknowledge, an opportunity to withdraw and sufficient time to be able to withdraw. In other words, not getting into the bank with your compatriots and seeing that they have guns when withdrawal is not easy. It means you have to have foreknowledge and a reasonable opportunity to withdraw. Those are absolutely novel principles that Rosemont established. And in terms of novelty, as an editorial aside, I feel sympathy for the defense lawyer who's told that the argument should have been foreseeable because Judge Wilkinson thought of it because that's a brilliant person thinking of an argument. Well, I mean, look, some creative attempts have been made, but none of them that I'm aware of before, and particularly when Rosemont didn't even raise this argument, even in the circuit court until a month after Burwell's appeal was over. I just don't think it's fair to say there's not cause for not raising it prior to, at trial or on appeal, for Mr. Burwell. Can I go back to, unless there's a follow-up question, can I go back to the divisibility issue for a second and on the rule of lenity? And this actually picks up on something that Judge Wilkinson was asking Ms. Millian earlier. So I hadn't thought of this before, but if we go back to the trial stage, as opposed to the stage now where we're trying to figure out how 924C works, if a defendant argues to the trial judge and then subsequently raises the issue on appeal because the argument's rejected, let's say, that this is a statute in which actually the force part and the extortion part should be treated as different because we want to make sure the jury unanimously finds either force or extortion, the kind of unanimity instruction that a defense lawyer often has the incentive to make. Does lenity kick in there? Could somebody make the argument that because of the rule of lenity, actually you should treat this statute as if it treats these as distinct because we should get the benefit of having unanimity as to each? And the reason I ask that is if maybe it doesn't for some reason, but if lenity does apply there, then there's something a little bit odd about saying that you get lenity to promote that instruction at the front end, but then you get lenity to have the opposite conclusion at the back end because they would be working across the room. I'm not sure I'm following the question. Okay. If it's on me, I'm sorry. No, no, I'm not asking. We're kind of falling asleep here. No, let me just ask the first part of it instead of trying to tidy it up. So I'm just asking at the front end if you're representing somebody who is a defendant in one of these cases under the first paragraph of 2113A. And in that context, you want, I think you have the incentive to say the jury should be required unanimously to find either force or extortion. They shouldn't be able to disagree on whether it's force or extortion, but just unanimously find that it's one or the other because I think that's beneficial to defendants to have it the other way. Would lenity kick in at that point to say, actually, it's a close call under the statute. I can't tell if unanimity is required in the way that you're arguing, but because of lenity, I'm going to agree with you. You're asking about a question that was not raised at the trial level. Yeah. Could you have argued lenity on top of, as a basis for your unanimity request?  You know, I guess my sense, and I'm sort of stepping on my colleagues so I can get into this, I think these were treated as means of the same end. And I don't know that, I mean, you're basically saying, could you argue that to the district judge that they're not means because it's not clearly been stated that they're simply separate means. And then on appeal, could you make that argument? And I guess my point at the end of the day then is if you could make that argument for lenity reasons, maybe you can't. But if you could, then there's something a little bit in tension about saying at that point, lenity supports divisibility, but then now we should say lenity rejects divisibility. I just wonder what work lenity can do at the end of the day if we're actually seeing it as potentially harming and hurting depending on where you are. I guess what I would say on that is this. You're saying if you argue it there, you can't argue it later. My view of lenity is it doesn't have to be the same answer. In other words, lenity can support one interpretation on one issue and the other interpretation of the same issue depending on the consequences. So I was having the same thought only in a much less case-specific way than to Judge Trinivasan's question. If we apply rule of lenity to a statute because it's not clear, aren't we interpreting that statute in a way that then has precedential force? And given that, as Ms. Millian was saying when she stood up and Judge Wilkins was saying as a defense lawyer you're saying this, that your argument, if you prevail, will deprive you in other cases of the ability to request a unanimity instruction as to these different offenses because they will now be seen as mean. And so given that this issue is sort of bivalent with respect to the lenience that a defendant is owed, does that mean that lenity is inapplicable? I don't think lenity is ever inapplicable if there is ambiguity. But let me just say this. For the ambiguity here, I mean, I don't need to belabor it. Yeah, no, okay. So we're arguing extortion is part of bank robbery, a form of bank robbery. And that may mean that there's certain people, if you're looking only at 2113, that could be found guilty under 2013 that otherwise might not. So you're broadening the scope of who is liable. But on the 924C side, you're narrowing the people who are eligible because if extortion is included, they're not eligible here. And so the question is do we have to have the same decision on both? And my answer is no because lenity works to the benefit of the defendant in both cases. But how can it? Because then you'd be construing the same language to do two different things. I mean, we have to see if that's applicable. All you're really finding is that Congress didn't make it clear. If Congress doesn't make it clear, then if you're charged with a 2113 extortion only, the lenity works in your favor. But we're finding more than the Congress didn't make it clear because saying that Congress didn't make it clear is just a predicate to our then deciding which way the statute is to be construed. And it would be odd if, suppose there were a decision already that said that because of lenity principles at the front end, the way to read the first paragraph of 2113A is that extortion and force are not different means. They're actually different offenses because then the defendant gets the benefit of a unanimity instruction. Then at that point, I don't think you could have an argument at this stage that actually for this person, lenity should mean that the statute actually treats these as different means and therefore 924C can't be applied. I guess what I would say is this. I don't think you need to definitively make a decision on how the statute is written in order to apply lenity. In fact, quite the opposite. Lenity is in place to encourage and force Congress to be clear about what its language means. And all you need to find is that the statute as written is unclear. You don't need to go further and say we definitively find that it's A versus B. It can be A if it works to the client's benefit in one situation and B if it works to the client's benefit in another situation because it's on Congress. It's not on you to decide what this means when Congress has written it inappropriately. And the law of lenity is the defendant gets the tie. If you're not clear, if Congress hasn't written it clearly, that's on them. And the defendant should not have to spend 15 years in prison when the law has not been written clearly in my case. And in a 2113 case, maybe it means somebody charged with extortion as robbery doesn't get charged either. But there's not an inherent inconsistency. You don't have to try to decide what this ambiguous statute means definitively. In fact, you shouldn't. If it's ambiguous, you don't need to decide that. All you need to decide is it's ambiguous, sufficiently ambiguous, to where the defendant gets the tie. All right, thank you. Thank you very much. We'll hear from the government now. Mr. Cahill. Yes, Your Honor. Timothy Cahill for the United States. I'd like to begin by addressing the Johnson claims. As every court of appeals to address the issue has found, 2113 is divisible as to robbery and extortion. To the extent that there is any ambiguity on the face of the statute, this interpretation is confirmed by the history not only of this legislation, but longstanding historical recognition that these are separate offenses. I would say in that respect, this case is very similar to this court's decision in Katala, where this court found that where a statute encompasses two different types of crimes, in that case it was a conspiracy and a substantive crime, that the law has long treated as distinct offenses, and there was no reason to think that Congress had departed from that settled principle, they were viewed as divisible within that statute, even when there were fewer syntactical and structural differences in the statute at issue there, section 1363 than there are here. And I would push back, especially on Appellant Perkins' argument, about when Congress, when any legislative body, frankly, combines historically distinct offenses into one statute. In all of the authorities that Appellant Perkins cites in support of the idea that when a legislative body does that, they should be presumed to be grouping those distinct offenses into one statute, there were specific things that courts relied upon to find that they should depart from the historical precedent of treating them separately. And I would point specifically to the Cintron case from the 11th Circuit and the Hummel case from the state of Utah that Appellant Perkins relies on. In both of those cases, legislative bodies passed laws that expressly identified offenses that had historically been treated as distinct and said in the statute, in the language of the statute, that they were being combined into a single offense. But what's wrong with this? It doesn't seem to me to be an inexorable truth that extortion can't be considered a species of robbery. And even robbery is wrong, of forced violence and intimidation, obtaining bank property by forced violence or intimidation. So I would push back on that, Your Honor, because I would point to the discussions of the historical development of the common law of extortion in which extortion was developed specifically to encompass conduct that was not captured by robbery, which would be the opposite of being a species of robbery. It was discreet. I mean, I would point to the Gooch case out of the 6th Circuit, addressing the distinctions between robbery and extortion in the context of the Hobbs Act case. And in that case, the 6th Circuit expressly said that actually a single crime can't encompass both robbery and extortion for that very reason. Because of the concept of an extortion, where it has this sort of term of art of consent, which of course doesn't mean a truly voluntary transaction. Does the government regularly argue, because it sounds like there are cases in which the jury is given an instruction that doesn't require finding either extortion or force unanimously. There may be some cases, Your Honor. So I would respond to that in two respects. One, I would note that in Katala. So first of all, I would say three respects. First of all, I would note that in this case, to clarify, there's no dispute that in this case, both the charging document and the instructions were specific to robbery. I would note that in Katala, even when in that very case the instruction was erroneous and grouped them together, the court didn't find that dispositive, where the divisibility analysis led to a different conclusion. But then also, I would note that in the cases where that of Pell and Perkins is identified, where there are indictments that were overly broad, that included the full statutory text and included both, in none of those cases were there, was there any litigation about divisibility or multiplicity issues? And in fact, in the Smith case, that's the one that's the only local case from the district of D.C. that's cited in a Pell and Perkins' reply, the defendant in that case pleaded guilty. And the actual guilty plea document is very specific that it's only about robbery. It actually doesn't have any language about extortion. It only has the language related to force,  or intimidation and describes the offense as bank robbery. And in the case law involving these types of crimes, usually the case... It just seems to me that if you're right, that there's just this clear, historical, uniform tradition that extortion, on one hand, and what you're calling robbery, but the statute actually doesn't use that term, except in the title that covers all of 2113, which nobody thinks everything in there is either divisible or indivisible. So the force part of it and the extortion part, then the pattern instruction would clearly reflect that. The government would have consistently, every single time, required that in every case, and it just may not be as clear as you're supposed to. So I don't think that the case runner is simply because, as is often the case in the development of legal principles, where something isn't directly at issue, oftentimes language ends up being imprecise, whether that's in court decisions or in instructions. And we note that consistently where this issue has been expressly raised, courts have consistently found that these are divisible. I mean, every court of appeals to address the issue has found that. We cited a number of district courts, as far as we're aware, every district court that's addressed it has found it, but it's actually conducted a divisibility analysis here. It does sound sort of impressive when you say, you know, every court of appeals to have considered it, but when I looked at those cases, I was surprised to see that I think there were four, three of them really had no reasoning whatsoever. And the King case just wasn't entirely clear to me how the King case, you know, that the conclusions that it was drawing from the materials that it was discussing actually followed, at least in, it wasn't, it wasn't apparent. For example, the house report that treats this quite explicitly as, to treat extortion as something that the, that committee thought was already covered. You know, the introductory phrase of that paragraph, there is no gap in federal law. Extortionate conduct is prosecutable, either under the bankruptcy provision, 2113A, or the Hobbs Act. This bill amends 2113A expressly, meaning it was implicit, now we're making it express, to cover crimes of extortion directed at federally insured banks. So that seems pretty powerful. And yet the first circuit, I can show you the opposite inference. I believe if I'm remembering correctly, it's saying,  the Hobbs Act seems to treat them separately. And by referencing the Hobbs Act, the 1986 amending enactment intended to do the same. I just wasn't sure that that followed. And so your honor, my understanding, and I don't mean to speak for the first circuit, but my interpretation of what they were driving at. And even if I'm wrong, I think this is the proper analysis. So this is what I'll argue before your honors, is that the context of that legislative history in that house report is significant, which is that Congress wasn't purporting to do a statutory analysis in the way that courts do. What Congress was confronting is that some courts had found there to be a gap, and clearly Congress did not want there to be a gap. What's relevant here is that this court is analyzing the statute as it exists after they amended it. And their solution of how they amended it was to import the terminology and the definition of extortion from the Hobbs Act, where these are expressly set forth as different crimes. So we don't even need to presume that Congress was aware of how this is defined and set forth in the Hobbs Act. The house report actually uses the same language as the Hobbs Act. And, in fact, this whole issue came up in the context of the interrelationship. So 2113, I'm sorry. Suppose that there's two strands of cases, some of which in the prior regime where extortion wasn't specifically mentioned in the first paragraph of 2113-A. So there's two strands of cases, some of which say that extortion is covered, and some of which say that extortion is not. And then the government, I assume, is making the argument all the time that extortion is covered when it wants to bring a charge. So then there's some disagreement that emerges, and then Congress says that we've got to rectify this disagreement. And they just put in the statute, we're making a statutory finding that the first set of cases is right, and the statute has always covered extortion. And just to make that clear, we're going to add or by extortion in the statute. Would you still be making the same argument? We would, Your Honor, especially because Congress- Even if that's the case, you'd still be making the same- Given, again, I think there needs to be something clear that Congress is- Congress's goal, even in that scenario, is to make sure that the statute criminalizes the conduct that it wants to criminalize. And Congress is making that amendment and passing the law in the context of the common law history, the early codification of these, the development of these different discrete types of crimes. And then also the Hobbs Act, where they're expressly set forth as different crimes. And in that context, there's no reason to believe that Congress, in 2113, intended a different treatment, not only from the Hobbs Act, but from the entire history of how these two crimes have been treated. So suppose Congress, in its findings, for whatever reason, it doesn't actually amend the text of the statute. It just inserts a finding into the statute that says, there's two strands of cases. We agree with the strand of cases. From this point forward, the statute should be understood to line up with the first strand of cases, which finds that extortion is covered. I mean, at that point of view, there's no possible argument. It's a more difficult case, Your Honor, certainly. And then, and also it sort of raises the interesting issue of to what extent, what Congress says, something that's contrary to the language of the statute, which is a whole different piece of some other canons of construction that aren't implicated here. So, so I certainly would acknowledge that we'd be facing a more difficult argument. That, that isn't, that isn't the scenario we have here. And I also wanted to respond in terms of putting, you know, what we believe is positive weight on the historical development of these statutes. I did want to respond to some of the discussion of the Schad case, which addressed felony murder. In that case, the court didn't just take it as a given that the fact that a statute had encompassed felony murder and murder in the same statute meant that there was only one offense. The Supreme Court actually said it was significant that treating felony murder as a species of first-degree murder finds substantial historical and contemporary echoes. And went all the way back to the common law, where it said that they actually were treated as alternative aspects of the malice of forethought of unlawful killing. So, whether or not someone on a blank slate might reach a different conclusion, the court relied heavily on the historical development, which viewed those as a species of the same crime. And the historical development of these crimes is the opposite. But the Supreme Court, in interpreting 2113, in cases like Bell and Carter, those cases, one was whether bank larceny was a lesser-included offense of bank robbery. But in both cases, the Supreme Court was very explicit in pointing out that they believed that Congress had departed from the common law when they made bank larceny a crime in that larceny didn't necessarily mean exactly the same thing between common law and larceny as part of bank larceny. So why shouldn't we see bank robbery as the same thing? So, Your Honor, it's not the case, and we were supposed to be the case, that a legislative body can't depart from common law. Of course it can. But our argument here is that, where the law has long treated things as distinct offenses, there needs to be a specific reason to think that the legislative body has departed. And so I would point again, because I think the analysis is pretty instructive, in the Cintron case from the 11th Circuit, where they were dealing with a Florida statute that expressly combined different types of drug offenses that had been historically treated as different, and specifically said, in the legislation itself, not just in the history, in the actual statute, that these were now being combined. In that case, the 11th Circuit distinguished from a different Florida statute that also combined selling,  and delivering drugs. And that statute was found to be divisible, because those were discrete and different types of crimes, and there was no indication that they had been grouped together. So even if they lost, sorry. What are we to make of the fact that Congress didn't define extortion when they added it to 2113A? So certainly, this would be a clearer case if they had, Your Honor. But I,  point to the fact that the terminology used when they added extortion here so closely mirrors the Hobbs Act. And... But wait. I'm sorry. Finish your sentence, I... Well, so closely mirrors the Hobbs Act, and it was done in the context of the interrelationship between 2113 and the Hobbs Act. The fact that they're discreetly set apart in the Hobbs Act, Congress, I think the presumption would have to be that Congress is treating them the same. So, let me have you answer my hypothetical, the guy with the green coat. So, recall, the bank manager gets a phone call from his wife. She says, man's got a knife to my throat. Says he'll kill me if you don't give a bag of money to the man with the green coat inside the bank. Bank manager says, tell him, tell him I'll do it. Tell him not to hurt you. And he hands the bag of money to the guy with the green coat. The guy with the green coat's on trial. Does he get a unanimity instruction with respect to force and violence theory versus extortion theory? I mean, a unanimity instruction wouldn't be, I would say it wouldn't be inappropriate there. Another solution that I think is... Yes or no? Oh, if it's requested and that's the only thing straightforward, I think the answer would be yes. But I would follow up by saying...  Because these are divisible crimes. These are different extortion, they're separate and divisible crimes. And frankly, the reason why I was trying to add a little bit more to my answer,  I'm not trying to avoid your question, is that I think in this scenario, in fact, the more proper solution would be to only instruct on the extortion theory. Because robbery, both at common law and as defined here, includes taking the, by taking the property from the person or presence of another by fear or intimidation or threat of force. And in, you know, a lot of extortion cases, the idea is that the person... But the jury could find that he took it by intimidation? I guess in the precise scenario where they interact personally, Your Honor, in that one, it could be either. It could be either. If it was a different, in my mind, I was thinking of taking the money to a location and leaving it there. But I'm realizing now, in Your Honor's scenario, they do interact personally. Let me ask you a different hypo. So, the guy in the green coat, you know, goes up to one teller, punches that teller, and takes money from that teller, then walks to the next window, punches that teller, takes money from that teller, comes out. Can, can, the government indicts him for two counts of bank robbery, and he says, no, those merge. Those, are those two counts, or is that prosecutable only as one count? I think that would raise a different set of questions,  in terms of whether or not the offense is even of the same type. You know, that might start raising questions about whether there was a fork in the road type analysis, between two offenses of the same type, more so than the issue we're presented with here, about the distinction between the different types of crimes, the nature of the conduct. I understand that's a different circumstance. I just want you to answer the question. I think, I think I don't, I would lack, I would lack enough information, Your Honor. I think there might be arguments both ways, in that sort of scenario. A lot of times, those cases hinge on specific factual questions. But, but again, I don't think that's what they adhere to. But what question would make that two, two separate offenses? He punches one teller, and five seconds later, he punches teller two, and he takes money from both, and walks out. And the reason I hesitate to, give you a straight answer, Your Honor, is because I don't feel confident in my answer. I know that part of that analysis, is that different statutes, sometimes divisibility, in that case, can be directed based upon the number of victims. And I don't, I have not, you know, analyzed in this context, whether that would be the determinative question, for divisibility, in this context. If multiple victims, would result in multiple charges, or if there would need to be more of a break. Up the top, up the top, I simply don't know that answer. Okay. Well, the reason I ask you that, is because the next question is, suppose a guy in the green coat, went to teller one, and said, give me some money, or I'm going to show your husband these, pictures of you, you know, having an affair with someone, and the teller hands over the money, and then he goes to teller two, and just punches them, and takes the money. Are those two offenses, or one? I mean, I think in that case, it's much clearer, those are two offenses, because the nature of the conduct, is so different, that the person has actually, committed two completely different types of crimes. I think that's a much clearer, and finally, I think, I don't see how that squares with your argument, that you know, this is all the same, it's like the common law, because, I think we could find, reporters, regional reporters, by the dozens, or hundreds, where, one person goes up, or a group of people go up, and they,  maybe to a couple, or two or three people, and they, you know, rough up one guy, and take his wallet, and then rough up guy number two, and take his, take his, money. There can be, two crimes, because there are two victims, but, if, there's only one victim here, in the bank, courts would say, you know, that's one crime. And so, again, your honor, let's say, let's say, say they, you know, they rough up the guy, and one guy takes his wallet, and then somebody else, roughs him up some more, and says,  you were, you know, you've got an iPhone, or a watch, and they take that. That's going to be one crime. So, again, respectfully, your honor, I think in a lot of scenarios, where multiple people are assaulted, there would be separate crimes, but I don't think that that's, again, what's being presented here, and I would emphasize, a major distinction, between the two hypotheticals, is whether or not the person's committing, the same type of conduct, and the same crime, which actually results in a different divisibility analysis, as opposed to discrete types of crimes, and that's why I think it's significant, that extortion is directed, at a different concern than robbery. Robbery's focus is on, the immediate bodily, someone's being placed in fear of immediate bodily harm, and extortion is, was specifically developed, both at the common law, and eventually in codification, to address coercive conduct, facing someone in a different type of fear. Well, I take your point, because, my understanding has always been, that robbery is theft, plus an assault, that's common law. Armed robbery is theft, plus assault with a dangerous weapon, whereas extortion, is theft, plus a threat. So, you know, you take common law, theft, common law, threat, combined the two, you get extortion, robbery, you take common law, theft, common law, assault, combined the two, you get robbery. So in that sense, they are distinct, a threat is a different crime, with different elements, than an assault. So, I take that part of your point, but the question here is, is that, even if that is true as a general matter, and that's probably why courts have found Hobbs Act, to be divisible between extortion and robbery, because, it's still, kind of, been construed as importing in, that common law understanding, of how robbery works, and how extortion works. We still have to, determine, whether, by importing extortion here, Congress intended to, preserve those common law meanings. And what do we do, when the Supreme Court has said,  in this, with respect to this very statute, it's not necessarily the case, and, I mean, is there any case, for the visibility analysis, that says that, kind of the default, is that we assume, that they keep the common law meanings? So, I would say that, Catala comes pretty close to that, Your Honor, when it says that, where the law has long treated, conspiracy and substantive crimes, as distinct offenses. So, here's my question about, the government's position on this. How much are you resting, on the, obtained, with consent? I understand this is, you know, a kind of punitive consent, by extortion, versus take, by force. Take over the, you know, overcoming the will, by force. So, the government seems to rely on, both a distinction between, obtaining and taking, and a distinction between, consent and non-consent. Is that right? That's right, Your Honor, I would say, with respect to the consent, that's 100% right. With respect to the, obtained versus taking, we acknowledge, and I know, Appellant Perkins has pointed out, that those have not been, 100% consistently, throughout the common law, used as discrete concepts. When you say 100% on, consent and non-consent, you're saying that, extortion is a way, of getting something, from someone that doesn't, want to give it to you, but doing it with sort of, this punitive consent. Do you think, consent that they don't, really want to give. Exactly. To you, that makes a difference. Yes, absolutely. I think the, Ocasio case, from the Supreme Court in 2016, goes into great depth about, the concept of consent, in the context of extortion, and what that means. I think punitive consent, is maybe a good way of putting it. They sort of, describe it as a term of art, a special type of, you know, consent. So that's the common law, has the consent, and the Hobbs Act, in its definition, has the consent. But in the House report, to the, 1989 amendment, of 2113A, Congress expressed, this intention, that extortion, would be defined as,  obtaining property, from another person, without the other person's, consent. Which seems to distinguish it, from, common law extortion, which was understood, as obtaining property, with this sort of, punitive consent. So again, the legislative history, seems to show that Congress, did not intend, to bring, a common law notion, with its soil, into, 2113A. With respect to that, I mean, we agree wholeheartedly, with the Vidrine case, from the Eastern District of California, that we cited, which said that, in the context of the House report, it's clear that the word, without there, is a typographical error, given that there's no indication, in the report, that Congress intended to make, such a drastic shift, in the meaning of extortion, to literally define it, in the opposite way, that it has been defined, in the Hobbs Act, and throughout the history, of the common law. But the word, without there, is pretty clearly, a typographical error, given that, that would be such, a drastic change in law, you would have expected Congress, to explain why, they were defining it, in the opposite way, that it has been defined. Can I ask a question? I don't want to, if you have a follow up. Go ahead. Along these lines, on how much work it's doing, and it should do, that extortion, that common law, could be seen, as something different, from robbery. So suppose what Congress did, and then I take your point, that take and obtain, sort of distinct, but not necessarily, completely distinct, that there's some mush there. So suppose, suppose that Congress, maybe you have an answer, to that, it seems like you did, but just bear with me, for a second. So suppose that Congress, what they did in the statute, is they said, when they decided, what to do with extortion, whoever by force and violence, or by intimidation, or by extortion, takes or obtains, blah, blah, blah. So, it's just adding, by extortion,     to, by force and violence, or by intimidation, or by extortion, takes or obtains. They do a bunch of other stuff. That's a coherently written, provision. I think everybody agrees, that by intimidation, is a means, not a divisible element. And if you tack on, by extortion, to that, would you say that, well, okay, even though there's this rich, common law history, in the way you view it, because of the way, Congress arrayed the terms, we would reach the conclusion, that extortion, is a means,   parallel to intimidation, and force and violence, so it's a means. I think, I mean, so first I would say, no, I don't think that would change, the outcome here, but it would be, I mean, that would make it, a less strong argument, I think. Oh, no, so you would take the position, that even though, it's written, in exactly parallel terms, that extortion, works just like intimidation, in the geometry of the statute, that because of the, common law history, we should treat intimidation, as a means, extortion, as an element, with the consequence, the juries have to be, given a unanimity instruction, on extortion, but they can't be given, a unanimity instruction, on intimidation. Yes, your honor, and I would point again, to Katala, where I feel like, the scenario your honor, has outlined, I think is actually, much closer syntactically, to what the court, was confronted with in Katala. But in Katala, was there also the added, and I just don't remember, the complete language, that there would be something, that would be, exactly parallel, but would nonetheless, be treated as a means, and then this would be treated, as an element, because that's what, I'm inserting into it. Maybe Katala did have that. I take your point, that if there's a statute, that just uses by, then it's not, you could have an open question, as to whether that's, an element or a means.  I think that the shortest, the shortest way, I can put it your honor, is that the separate use of, the verb phrases here, and especially the fact, that obtain, is taking the same exact terminology, from the Hobbs Act definition, strengthens our position. I don't think that, that is necessarily, that that, that acts into that, that the other, that an alternate, the opposite outcome is. I mean, in the legislative history, the wording is actually, rather closer, than the, enacted statutes wording, in the sense of, weaving together, the, the role of extortion, parallel to, the pre, 1989, 86 terms, says the term extortion, as used in 18 U.S.C. 2113a, means obtaining property, from another person, without the other person's consent, induced by the wrongful use, of actual or threatened, force, violence, or fear. So, it's explaining, that it is, kind of, you know, another means of, similar, it has this kind of, I mean, to me that seems like, that's close to what, to the hypothetical. I would disagree,  and for this reason, that, that language, is the exact language, used to define extortion, in the Hobbs Act, and the, the idea of extortion being, not just a subspecies, of property, but a separate crime, that encompasses different conduct, where, the type of fear involves, the use of threatened force, or violence or fear, it's where those threats are made, not, in the person's, where the property is not taken, from the presence of person, or presence of another. So, if someone writes a letter, makes a phone call, just threatening somebody, to do something, or to bring money somewhere, or to leave money somewhere, not from the person, or presence of another, because the key distinction, and the key danger, that is being addressed by, robbery, is, placing somebody in fear, of that immediate bodily injury, and, at common law, and then eventually, in early codifications, like the field cold, and the early New York penal code, the reason why extortion developed, was because, that specific crime of robbery, did not encompass, placing people in fear,  a different type of fear, a fear that wasn't involving force, or, a fear that wasn't, in the, placing the person in immediate fear, of bodily harm, where the property wasn't being taken, from the person, or presence of that person. I do notice, why, why, why would Congress, then, make extortion, as part of, bank robbery, as a means of bank robbery, punish more, severely, than Hobbs Act, extortion? Well, I think, in the bank, there is the same thing. Well, I mean, the robbery is also the same in Hobbs Act, and the bank act. The, the distinction Congress was drawing, one of the reasons why, they were trying to resolve the circuit split, about what should be the exclusive means, of prosecuting, this crime, was, the difference in, difference in interest between, the Hobbs Act, and 2113, is about, the Hobbs Act, more generally, relating to interstate commerce, whereas, the bank statute, that they wanted to encompass, or that they wanted to criminalize, both robbery, and extortion, and in fact, also burglary, was addressed to protecting, federally insured banks, and Congress made the policy decision, that, you know, there may be, that that was even a higher priority, than generally, prioritizing interstate commerce, but it wasn't a distinction between, the conduct, it was the, that's why they, that's why they were funneling, any of the crimes, that involved interstate banks, so, excuse me, federally insured banks, to 2113, but, I'm sorry, I also wanted to make sure, I had a chance to address, the Roseland claim, but if your honors, have any other questions, about Jonathan, I would love to. I actually had a question, about the 2113 D, I know that, that government, acknowledges, that that was, not preserved, it's not relying on it, but, in a situation, like this, even were this, forced to hold, that, 2113 A, is, indivisible, had that been preserved, the divisibility or not, would have no effect here. I don't, I mean, so your honors, because this hasn't been briefed, it's not part of the, was not within the scope, of the certificate of appealability, I mean, as we acknowledge, we're not relying on it here, but all I would say, is we do point, in our brief, to a 10th circuit case, it's an unpublished decision, I acknowledge, but a 10th circuit case, that addresses that very issue, that did find the, fact that, the person, that the defendant, was convicted also, under subsection D dispositive, but you know, we have not briefed that, and aren't relying on it here, for the reasons your honor, are set forth. Right, which would support, what Judge Pillard said, the 10th circuit decision, then would mean that, if that were, something we followed, that would mean, that the debate, that we're having, about the way, that the frameworks, would drop out, it wouldn't matter. Yeah, I mean, that would, right, you would not also, then need to, analyze the divisibility, I think that's correct. So, what is the reasoning, let's say, before, extortion was added, the 2113A, how, how do we know, just by looking at,          the statute, the statutory text, that, by force and violence, or by intimidation, that those are, alternative means, rather than, different elements, what tells us that? I mean, without going into, just rereading, this court's own decision, back to it, I mean, that's the issue, that this court addressed, in Carr, and found based on, statutory text, and history, in the full divisibility analysis, found that those are, alternative means. So, I mean, in that case, the court wasn't asked, to even look, at the language for extortion. So, addressed just to the issue, your honor has identified, you know, this court did find, that those are alternative means, and that that's a settled issue. I understand, that we found that, but I guess I'm trying, to get you to, tell me what you think, were the keys, to that conclusion. I think, to, to put it in, the context that I think, is most relevant, to this case, it's that, all of those, are, subsumed within, the traditional understanding, of robbery. I mean, that's basically defining, different types of robberies, whereas extortion, is not again, a type of robbery, it was a crime, specifically developed, to encompass conduct, not encompassed by robbery. And that's because, of the presence, or not? That's, that's a critical factor, that the person, or presence of another, is certainly, a critical distinction. Yes. And I did, I acknowledge, I'm out of time, but I, with your honor's permission, wanted to address, the Roseland claims. Thank you. The first thing, I wanted to clear up, is to eliminate, any confusion. We do not agree, that this is a de novo review. This is a challenge, to a jury instruction, not made below, and raised for the first time, on collateral attack. So, first of all, we believe it's procedurally defaulted, but even if it's not, it should be reviewed, for plain error. But, even if the, claim isn't procedurally defaulted, we submit, that based upon, the record evidence, in this case, there would have been, no plausible basis, to argue, that Mr. Burwell, participated in this robbery, but did not know, that his confederates, would be armed. To answer one of the questions, that came up, during appellant's argument, there is testimony, first from Mr. Chetani, that, everyone was holding, their weapons, in the, stolen minivan, on the way over, to the crime. And these are, two and a half foot long, AK 47. These are not concealed handguns. There's no, there would have been, no plausible basis, to argue, that someone was, unaware of them. But, beyond even just Mr. Chetani, argument, excuse me, testimony, I point to, supplemental appendix, page three, that we submitted, that has the testimony, of the security guard, at the IB bank, who was standing outside the bank, and said that the robbers, jumped out of the minivan, holding their AK 47. They were not stashed, somewhere else. They were not hidden. And so again, we submit, that based on the record evidence, that there's no reasonable, probability, that the jury could have found, that Mr. Burwell, lacked advanced knowledge. I did also want to address, the questions about the, whether the knowledge requirement, advanced knowledge requirement, should extend to the type of gun, being a machine gun. I want to note that, Appellant Burwell has identified, no authority, and made no argument, as to why this court's, en banc decision, would not be controlling here, given the principle that were, an element requires no proof, for the mens rea, of the principle, that no proof of mens rea, is required for aiding, and abetting a liability. And Rosemond, did nothing to change that. He did not suggest, that a higher mens rea, is required for an accomplice. But if you're honest, because I'm out of time, if you're honest, I have no further questions, on that claim. I ask that the court, affirm the judgment, of the district court. Thank you, your counsel. Ms. Smillion, will give you two minutes, for a rebuttal. Thank you, your honors. A couple of points, I'd like to make, and then if you all, have any additional questions. There was a lot, of discussion about, this circuit's decision, in Katala. And I just want to point out, that Katala itself, in its own text, refused to extend, its intuition, about conspiracy, being different, from a substantive offense, to the differences, between robbery, and extortion. When it discusses, the Hobbs Act, I mean it does so in passing, but when it does so, it specifically, puts as means, robbery and extortion. And so I think, in that decision itself, it's specifically, contemplating a different outcome, potentially, in a robbery, versus extortion context. Under this statute, or under the Hobbs Act? Under the Hobbs Act, but I think, what it demonstrates, for this statute, is that this intuition, that robbery and extortion, are so different, that they must be treated, as elements rather than means, doesn't on the face of Katala, itself follow. Secondly, as I said earlier, while I'm personally persuaded, that Hobbs Act robbery, is divisible, I think, if the court, disagrees with that, and doesn't even think, that Hobbs Act robbery, itself is divisible, then the government's, argument fails. There was some discussion, of the, sort of this concept of consent, versus not consent. I agree with, what you said Judge Pillard, the consent language, didn't make itself, into the statute, and the legislative history, suggests that, without consent, is actually what Congress, had in mind for extortion here. Do you have any response, to the argument that, given that, legislative history, narration, that relevant part, precisely tracks, the Hobbs Act definition, that as I think, it was in Northern District, of California, decision, the dream, said that it appears, to be a typo. I mean, I just don't, I'm not persuaded, by that Congress, writes things thoughtfully, if it had the Hobbs Act, in front of it, it presumably, would have copied that, text exactly, and I certainly, I certainly think, we don't presume typos, in the absence of, contrary information, and I think, I don't think we have that. We don't in statutes, but in, we're talking about, the statement in the report, right, at this point? That's true, but it's not, it's, you know, it's not a classic typo, where you use, you know, you have some sort of grammatical, like a subject verb, agreement error, this is a substantive, issue, and I just don't think that, that we have enough here, to conclude, that this is a typo, and as I point out, in my brief, I really think that, there's not a lot of difference,  with and without consent, many, courts have called it, illusory, so do, secondary sources. But what of, what of the issue, you know, the common law understanding, of robbery being, a theft, an assault, versus, extortion, and under the common law, being a theft, plus, a threat, those are two different things, why shouldn't we, believe that, those distinctions survive, once, this amendment is made, to the bank robbery statute. So, so the text, if you look at the, legislative history, the definition of extortion, that it gives references, force,  and fear. So it's contemplating, extortion, sweeping more broadly, than just threats. And it certainly is encompassing, the type of threats, that we agree, are satisfied, under the intimidation, taking by intimidation. Extortion can be committed by, non-violent threats, but it can also, as a hypothetical you've offered, suggest it can be committed, by violent threats, like kidnap your wife, and I'm going to slit her throat, if you don't provide, money or something. So I think in that respect, it's,  sort of captures, something that's more broader, than robbery. But, you, and not, I should say assault of conduct, in addition to threatening conduct. But you don't dispute, I guess the premise, of my question, which is that, you know, extortion, was a, different crime, under the common law, in the sense of being, theft plus a threat. And a threat, is not necessarily, synonymous with, assault. A threat is, can be broader than assault, but I think extortion, under the statute, here could encompass, assault of conduct. But do you have a response, on the common law? Is it true that, the common law, the understanding was that, extortion, and robbery, you wouldn't look at extortion, as a subset of robbery, because it had an, element that is, different from an element, that was necessary to, constitute robbery. If I'm understanding that. Yes. I, I'm not sure that I agree, with that. I, I've not seen. But you're not sure you don't. Yeah. I've not seen things, that specifically articulate, how you're describing, extortion and robbery, in the way that you just did, which is this threat, versus assault. I think, I do think actually robbery, is incorporated, in, extortion. And it can, extortion can include, assault of conduct, at common law, in addition to, threats. And the government, made the point that, they distinguish extortion, on the grounds that, robbery is committed, in the presence of a person, and extortion is not. But I, I disagree with that. Extortion, does not need to be committed, in the presence of a person, but it certainly can be. Okay. Thank you. Unless anybody has anything further? But I mean, you don't dispute that robbery, requires, the property to be taken, from the immediate, presence, of the victim. No. There's some, there's some, suggestion in the case law, prior to the, addition of extortion, that it did need to be, but. Say that again. That, I, let me back that up. I don't disagree, that that's required, of robbery, and not of extortion. But, but I don't think extortion, has its own element, that is, sort of separate, and different from robbery, I guess I should say. It doesn't have, what the government described, as being without, the presence required. So you're treating robbery, as a species of extortion? I, I think that's right. As opposed to extortion being, At the common law, I think that's right, yes. I, don't see how that could be, I mean, robbery, you know, you know, there's, kind of a famous, D.C. court of appeals case, on like, is a pickpocket, a robbery. And they said yes, because you're taking, to theft, from the immediate, presence of the person, and it's, there's an assault, because you gotta, kind of touch the person, unconsented touching, in order to, pick their pocket. Um, but there's gotta be an assault, isn't to be, for there to be a robbery. Um, and the whole, question in that context, is, like, is a pickpocket, really committing an assault, or not? And the court, had to, answer that question, yes. And, I think that's the way that, common law robbery is thought of. But you don't have to commit an assault, to commit, extortion, that's the whole point. It could just be a threat, and it doesn't even have to be a threat, of an assault, it can be a threat, that like, I'll just expose, some, you know, embarrassing fact about you, if you don't, give me a million dollars. I agree with that, but I think my point is that, that, assaultive conduct can, satisfy extortion. It can, but, but it's got, kind of, an entirely, kind of, separate element for, blockburger, or, unanimity type, analysis, right? I, I don't agree with that. I certainly, I, don't agree with it in the context, of, the, at least the statute, that we're talking about here, with respect to, extortion.  there, extortion is defined here, as, forced violence, and, and fear, putting someone in, forced violence and fear, and, I, I think, those are not a separate, that doesn't add a separate element, that, bankruptcy, what the government calls bankruptcy, changes by force. When you say extortion is defined, you're talking about, what the, what, what, yeah, because the statute, doesn't define it at all, right? Yes. Okay. Thank you, counsel. Mr. Smith, we'll give you two minutes, as well. Actually, I'm so sorry, can I make one final point? Okay, briefly. Yeah. The, there was a discussion of, lenity and what way, lenity cuts here. I don't think, this court needs to look to, lenity, because the, the law governing divisibility, itself, without turning to lenity, says, if we don't know what the answer is, the government loses, and the defendant wins. It wasn't clear to me, I was thinking about that, too, myself, because I had the impression, that there was, such a, divisibility, specific, presumption, but then when I, just as we're sitting here, went back and he said this, it wasn't clear to me, whether that was being, articulated as, an application of lenity, or something else. And was that from Mathis, or was that from? It's, it's from Mathis, and then it's repeated, in a number of other decisions. And also, from circuit courts. Mathis invokes Taylor, right? That's the part. And, and I would just note, that, you know, whether it's coming from lenity, or not, it's clear, that the Supreme Court, has told us, that there is this presumption, regardless of whether, to, to the point discussed earlier, it's sort of cutting both ways. And that applies, at the front end, at the unanimity stage too, that, same presumption? You have to work against, the same presumption, if you're asking for, a unanimity instruction? In the same case? Yes. Okay. All right, thank you, counsel. Mr. Schnipp, I'll give you two minutes. Thank you very much. You've been generous, with your time. I'll try to be brief. Government denies, that it's de novo, I'm reading, straight from page 38, of their brief. This is in the Rosemont section.  in reviewing the denial, of the 2255 motion, the government, reviews the district court's, legal conclusions, including issues, of procedural default, de novo. From their brief, page 38. Rosemont section. He also said, that someone outside the bank, a bank card, said, everybody came out, with guns, based on, supplemental appendix, page three. Reading from, what was actually said. Oh, I was standing out front, a van pulled up, somebody pushed the door back, two guys came out, with guns, pushed me in the bank, et cetera. Not everybody, not specific, to Mr. Burwell. An exaggeration. I just want to give you, an opportunity, to respond also, to the, testimony. It was very important, for everybody, to have a gun. Everybody wanted a gun, and he enumerated, in great detail, that the various guns, were passed out, and that there was not, no unarmed member, of the group. All I can say there, is, first of all, as Henry said, the Rosemont error, diverted the parties, at the presentations, away from the key issues. There weren't, cross-examination questions, asked at Chatano, because nobody knew, that it was relevant. This is a single witness case. It was not, overwhelming evidence. There were no bank videos, showing my client, with a gun, no positive idea, of him, with a firearm, in the bank. No DNA, of my client, was found on any guns. Only on the vest. Not on any of the guns. The earlier, Chevy Chase bank robbery, wasn't identical, and my client, as a first timer, wouldn't necessarily, have known of any routine. The properly instructed jury, could have found, an absence of a, beyond a reasonable, doubt standard, here. Especially, since it took 14 days, of deliberations. The evidence, that my client, of either, having a firearm, himself, or having fore knowledge, wasn't overwhelming. It was based on, the word of one man. A man, who was a cooperator. A man, who was the leader, turning down, on lesser players, like my client. And, where the teller, had pointed him, as the one, with the two handled weapon, that was the machine gun. He was the one, that had the machine gun, in his hands, according to the teller. And then, he turned on my client, down on my client. And now, my client, the minion, has served, more than a decade, more than Chitaney did, in jail. And he has another, 15 years ahead, unless you act. Please, act. My client, was a 26 year old kid, never incarcerated, before, in his life, when he made, this horrible mistake, in 2004. He's now, 46 years old. He has, 15 more years, ahead, in prison, unless you do something. Congress, did not say that, extra 15 years, clearly, was required. And the jury instructions, that led to that conviction, and that sentence, were erroneous, under Rosemont. We appreciate the court's time. Thank you. Thank you, counsel. Thank you to all, counsel. Mr. Smith, you were appointed by the court, to represent one of the appellants, in this matter. And the court thanks you, for your assistance. We'll take this case, under submission.
judges: Srinivasan; Pillard; Wilkins